ARKANSAS STATE HIGHWAY COMMISSION v.
DALE SADLER ET AL

5-5179                                          454 S. W. 2d 325

Opinion delivered June 1, 1970

*Thomas Keys* and *Kenneth Brock,* for appellant.

*Wayland Parker,* for appellees.

CONLEY BYRD, Justice. In this eminent domain action questions of just compensation for three ownerships were consolidated for purposes of trial. Appellant Arkansas State Highway Commission raises a number of points directed to each tract or ownership involved plus one common alleged error in failing to quash the jury panel. Because each ownership in effect constitutes a separate cause of action with facts peculiar to each, we will treat each ownership separately in this opinion and reserve to the last the common issue concerning the jury panel.

## THE SADLER TRACT

For reversal of the $35,200 verdict for the Sadlers, the Highway Department relies upon the following points:

"I.    The trial court erred in not striking the testimony of Glenn West as to values and resulting damages on the Sadler property.

II.    The verdict on the Sadler property was

excessive and not supported by substantial evidence."

Since both issues rest upon Mr. West's testimony, appellant's argument really boils down to a contention that sales used by Mr. West were not comparable to the Sadler property and thus his testimony did not constitute substantial evidence.

The record shows that West qualified as an expert to give an opinion on the fair market value of lands in the vicinity of Greenwood, Arkansas. It was his opinion that the fair market value of the Sadler tract before the taking was $170,370 and $121,215 immediately after the taking. His appraisal was made upon the basis that the highest and best use of the Sadler tract is a cattle ranch. In making his appraisal he relied upon the sales from Cook to McKee, Westbrook to Farrell, Needham to Shields and Woody to Brown.

The Cook-McKee sale was a 40 acre tract sold in 1966 for $25,000, lying about one quarter mile from the Sadler property. Mr. West considered the Cook-McKee sale in 1966 to be for agricultural usage. He pointed out that the land involved in the Cook-McKee sale was not as good as Sadlers' and that he would not have appraised it for $625 for agricultural purposes in 1966. On cross-examination he stated that the property is now being used to raise nursery stock and that its location with reference to the City of Greenwood did not affect its value at the time of sale in 1966. On redirect he pointed out that his reason for comparing the Sadler tract downward from the Cook-McKee sale, et al, was the fact that the Sadler tract was divided by an existing county road.

Based upon Mr. West's testimony the Highway Department argues that the sale price in Cook-McKee was not a sale for a cattle ranch or pasture land use but a sale enhanced because of its location with reference to U. S. Highway No. 71, and that it sold for a different, higher and better use. Upon this basis the Highway

Department argues that Mr. West's testimony is not based upon comparable sales and therefore his testimony is not substantial evidence. We can find no fact testified to by Mr. West to substantiate the Highway Department's contentions. In the Department's cross-examination of Mr. West it made the same contentions but in each instance Mr. West pointed out that the Cook-McKee sale was for an agricultural usage and that the sale price was not affected by its location near the city of Greenwood and Highway No. 71 at the time of its sale in 1966. In the absence of any fact conclusively showing the contrary we can find no error on the part of the trial court in refusing to strike Mr. West's testimony. It follows that his testimony was sufficient to sustain the judgment rendered.

## THE A. E. KESNER TRACT

For reversal of the jury verdict of $8,500 for A. E. Kesner appellant relies upon the following points:

"III.   The trial court erred in not striking the testimony of Glenn West as to values and damages on the A. E. Kesner property.

IV.   The trial court erred in not striking the testimony of A. E. Kesner with respect to value and resulting damages on his property."

The objection to Mr. West's testimony here again involves the Cook-McKee sale which Mr. West described as comparable and which the Highway Department argues is not comparable. For the reasons stated above, we find no merit in appellant's argument that Mr. West's testimony on the A. E. Kesner property should be struck.

Appellant's argument about Mr. A. E. Kesner's testimony is that there was no substantial evidence to support the $375 to $400 per acre land values that he placed on his property. Mr. A. E. Kesner placed a before value of $85,000 on his 181 acres and an after

value of $56,390. His land values were based upon the Woody-Brown sale, the Needham-Shields sale and the McKee nursery sale. The major portion of the Needham-Shields sale was woodland comparable to his woodland and sold for something over $600 per acre. Mr. Kesner estimated that he had some 50 to 55 acres of woodland.

Much of the appellant's cross-examination of Mr. A. E. Kesner dealt with whether his lands were comparable to the sales used by him. We can find nothing in the testimony of Mr. A. E. Kesner to support appellant's argument that his testimony as to land values and resulting damages could not be considered substantial to support a verdict. The same is true with reference to the suggestion that Mr. Kesner made no attempt to determine the amount of woodland he had on his property for purposes of valuation.

## THE JERRY KESNER TRACT

For reversal of the $4,500 judgment for Jerry Kesner, appellant argues that Mr. West's testimony on values and damages was not substantial because his conclusion on the difference between the before and after value of the property varied so much that it was impossible to actually tell what figure he testified was just compensation. The objection made at the close of Mr. West's testimony on the Jerry Kenser tract was as follows:

"We at this time move to strike the value testimony given by Mr. Glenn West in connection with Tract No. 7, on the basis that he has given no substantial evidence to support the values which he has placed, or the damages he has placed, on this property."

The record shows that Mr. Glenn West first testified for Dale Sadler; that without leaving the witness stand he testified for A. E. Kesner and also for Jerry Kesner, the property owner here involved. During cross-examination Mr. West realized that he had used the

wrong figures in testifying and attempted to make some correction. Thereafter the following occurred:

> "Q. We possibly made another mistake but it's not enough to make an issue over. We'll skip over it. You say that the damage that you have placed on this house is $6,000 and how much dollars?
>
> A. Two Hundred and Sixty-five Dollars."

At the close of Mr. West's testimony the question was asked, "Been up there too long, haven't you?" To which Mr. West answered, "Yes, Sir."

As we view the record, this argument about the speculative nature of Mr. West's testimony is made for the first time on appeal. For this reason it will not be considered here. Had the same argument been made in the trial court while Mr. West was on the witness stand and had his three appraisals before him, the matter could certainly have been straightened out if any confusion did exist.

## POINT VI

The Highway Department's point VI goes to all three judgments. It was a motion to quash the jury panel because one of the jury commissioners is a brother of one of the landowners in this suit. The Highway Department included 13 tracts in one complaint and Foy H. and Patricia Brown were the owners of tract No. 12. The record further shows that Mr. Red Brown, one of the commissioners selecting the jury panel, is a brother of Foy Brown. The trial court passed Mr. Foy Brown's claim to another term of court for trial before a different jury panel but refused to quash the panel with respect to the defendants here involved.

Ark. Stat. Ann. § 39-201 (Repl. 1962) provides that, "The circuit courts, at their several terms, shall select three jury commissioners who shall not be related to

one another by blood or marriage within the 4th degree, *who possess the qualifications prescribed for petit jurymen* and who have no suits in court requiring the intervention of a jury."

The qualification for a petit juror is set forth in Ark. Stat. Ann. § 39-102 (Repl. 1962) as follows:

"No person shall serve as a petit juror who is related to either party to a suit within the fourth degree of consanguinity or affinity. Provided, further, that any prospective juror who qualifies generally for service in a cause, and is found to be related within the fourth degree of consanguinity or affinity to any attorney engaged in the trial of the case may be peremptorily challenged for cause by any attorney or attorneys representing the other side of the case."

Based upon the foregoing statutes, the Highway Department argues that Commissioner Brown did not possess the qualifications of a petit juror as set forth under Ark. Stat. Ann. § 39-102. The Department also argues the "Appearance of evil"—*i. e.,* Caesar's wife should be above suspicion. We find this contention without merit.

As we read the provision in Ark. Stat. Ann. § 39-201 (Repl. 1962) that jury commissioners must "possess the qualifications prescribed for petit jurymen," it refers to the fact that petit jurors must be qualified electors of the county and from the area constituting a division thereof as described in Ark. Stat. Ann. § 39-208 (Repl. 1962). In *Bowie* v. *State,* 185 Ark. 834, 49 S. W. 2d 1049 (1932), we had a motion to quash a petit jury on the ground that one of the jury commissioners was not a qualified petit juryman within the meaning of Act 135 of 1931, providing that no citizen in this state shall be eligible to serve on either grand or petit jury oftener than one regular term of the circuit court every two years. We there held that a jury commissioner was not disqualified by having served on a petit jury

within the preceding two years. Furthermore, in Commonwealth, Department of Highways v. Garland, 394 S. W. 2d 450 (Ky. 1965), relied upon by the Highway Department, the court there pointed out that in disqualifying a jury selected by a jury commissioner who had litigation pending in court, that the Kentucky court was not to be understood as saying that the jury commissioner was so disqualified as to vitiate every jury trial in the court during that term. In doing so the court quoted dictum from Sullivan v. Commonwealth, 260 Ky. 471, 86 S. W. 2d 135, as follows:

". . . Of course, such juries [selected by a jury commissioner having an action pending requiring jury intervention] could not sit in the actions against the particular jury commissioner, but as to other proceedings, we think some prejudice or fraud must be shown before we would be at liberty to reverse a case for this reason."

Affirmed.